IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LYNN A. VAN TASSEL,                )
                                   )
                                   )
         Plaintiff,                )
    v.                             )    Civil Action No. 13-1672
                                   )    Judge Nora Barry Fischer
HONORABLE JUDGE THOMAS M. PICCIONE, )
*et al.*,                          )
                                   )
         Defendants.               )

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

On November 21, 2013, Plaintiff Lynn Van Tassel ("Plaintiff") initiated this civil action against the following defendants in both their individual and official capacities: Judge Thomas A Piccione ("Judge Piccione"), James R. Jendrysik ("Jendrysik"), Lawrence County Chief Probation Officer; Brian Covert ("Covert"), Warden of the Lawrence County Jail; Joshua Lamancusa ("Lamancusa"), Lawrence County District Attorney; and Pennsylvania State Police troopers Clyde Jones ("Jones") and Frank Noonan ("Noonan") (collectively, "Defendants"). In her complaint, Plaintiff alleges violations of her First, Fourth and Fourteenth Amendment rights (Counts I – III) in addition to raising state law claims of intentional infliction of emotional distress (Count IV), defamation (Count V), false arrest (Count VI) and false imprisonment (Count VII).

Presently pending before the Court are Motions to Dismiss filed by Piccione (Docket No. 11), Covert, Jendrysik and Lamancusa (Docket No. 13), Noonan (Docket No. 16), and Jones (Docket No. 28). For the reasons set forth below, Defendants' Motions to Dismiss are each GRANTED.

## II. FACTUAL BACKGROUND

As Plaintiff is proceeding *pro se,* the factual allegations in her complaint are to be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Washam v. Stesis,* 321 Fed.Appx. 104, 105 (3rd Cir. 2009). The allegations set forth in the instant complaint stem from a lengthy series of custody and child support disputes between Plaintiff and her ex-husband, Arthur Van Tassel, each of which culminated in a state court order directing Plaintiff to pay attorney fees as the result of her own vexatious litigation conduct.[1] When she failed to do so, Judge Piccione held Plaintiff in civil contempt and sentenced her to 90 days incarceration unless she agreed to a payment plan. *Van Tassel II*, 2013 WL 3169005 at *2. When Plaintiff again failed to comply, a bench warrant for her arrest was issued. *Id.*

On December 2, 2011, Judge Piccione agreed to release Plaintiff on house arrest and directed Jendrysik to arrange for electronic monitoring. (Docket No. 1 at ¶ 9). In order to facilitate the requested electronic monitoring, a miscellaneous docket was created indicating that Plaintiff had been charged with "indirect criminal contempt" pursuant to 23 Pa. C.S.A. 6114(a). (*Id*. at ¶ 10). On December 7, 2011, Judge Piccione conducted a "bail" hearing and released Plaintiff on "nominal bail." (*Id*. at ¶¶ 9, 13). On March 6, 2012, Judge Piccione issued another order removing the miscellaneous docket entry and expunging any suggestion that Plaintiff had

---

[1] The full procedural history of this litigation was exhaustively detailed by this Court in *Van Tassel v. Lawrence Co. Domestic Relations Section*, 659 F.Supp.2d 672, 676-82 (W.D. Pa. 2009), *aff'd*, 390 Fed. Appx. 201 (2010) ("*Van Tassel I*"); s*ee also Van Tassel v. Hodge, et al.*, 2013 WL 3169005 (W.D. Pa. June 20, 2013), *aff'd*, 2014 WL 1758894 (3rd Cir. May 5, 2014) ("*Van Tassel II*").

been charged criminally. (*Id*. at ¶ 19). Judge Piccione explained in his order that the criminal charge was simply an administrative placeholder required by Lawrence County's docketing system in order to effectuate electronic monitoring and was not intended to link Plaintiff to any criminal activity. *Van Tassel II*, 2013 WL 3169005 at *3; Docket No. 12 Ex. H.[2]

Plaintiff responded by filing a federal declaratory judgment action challenging the constitutionality of each of Judge Piccione's orders. *Van Tassel II*, 2013 WL 3169005 at *3. The district court dismissed her action after concluding that parallel proceedings were still underway in state court. *Id*. at *4 (citing *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995)). On appeal, the Third Circuit affirmed on the alternate ground that the district court lacked jurisdiction pursuant to the *Rooker-Feldman* doctrine because each of Plaintiff's claims sought federal review of a state court judgment. *Van Tassel*, 2014 WL 1758894 at 6.

Plaintiff subsequently filed the instant action, again attacking the circumstances surrounding her transfer from prison to house arrest and alleging that the miscellaneous criminal charge created to effectuate that transfer was "faked and forged" for malicious purposes by the "vertically integrated criminal enterprise" that is the Lawrence County Court of Common Pleas for malicious purposes. (Docket No. 1 at ¶¶ 15, 19). Plaintiff contends that the false criminal contempt charge violated her constitutional right to due process and to be free from malicious prosecution and arbitrary seizures. (*Id.* at ¶¶ 20-30). Plaintiff also asserts state law claims of intentional infliction of emotional distress, defamation, false arrest and false imprisonment. (*Id.* at ¶¶31-38).

### III. LEGAL STANDARDS

---

[2] A court "may incorporate by reference and 'consider an undisputedly authentic document that a defendant attaches to a Motion to Dismiss if Plaintiff's claims are based upon that document.'" *Davila v. Northern Regional Joint Police Bd*., 2013 WL 5724939 at *14 (W.D. Pa. Oct. 21, 2013) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)). As the party asserting jurisdiction, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3rd Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3rd Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Mortensen*, 549 F.2d at 891.

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained

4

that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3rd Cir. 2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

As noted above, Plaintiff primarily alleges that the circumstances surrounding her transfer from prison to house arrest – in particular, the miscellaneous criminal charge created to effectuate that transfer - violated her rights as secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Docket No. 1 at ¶¶ 20-30). In support of her contentions, Plaintiff focuses almost exclusively on Judge Piccione's orders placing her under house arrest, directing her to pay for electronic monitoring, placing her on bail, and expunging the miscellaneous criminal charge from her record. Defendants, in response, have raised a host

5

of defenses including the *Rooker-Feldman* doctrine, issue and claim preclusion, Eleventh Amendment immunity, judicial immunity, and failure to plead sufficient facts to state a claim for relief. Each will be discussed in turn.

**A. The *Rooker-Feldman* Doctrine**

Defendants primarily argue that this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. That doctrine derives from two opinions issued by the United States Supreme Court: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under *Rooker-Feldman*, "federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3rd Cir. 2010). Application of the doctrine is narrowly restricted to "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In determining whether *Rooker-Feldman* applies to a particular claim or claims, the Third Circuit has established the following test:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 284).

The *Rooker-Feldman* doctrine is not unfamiliar to Plaintiff. Indeed, each of her previous federal civil rights lawsuits has been dismissed on that basis. In 2009, Plaintiff filed her first § 1983 action in an attempt to reverse the unfavorable state court orders rejecting her child support claims against her ex-husband. Despite Plaintiff's argument that her due process and equal

6

protection claims had never been addressed at the state court level, this Court concluded that each was "clearly barred by the *Rooker-Feldman* doctrine." *Van Tassel I*, 659 F.Supp.2d at 691. In reaching that conclusion, the Court recognized that the majority of the injuries alleged by the Plaintiff – the loss of her property interest in unpaid child support and her right to free access to the courts – stemmed directly from the state court decisions. *Id*. at 691-92 ("The harms alleged . . . are clearly the result of, or caused by, the challenged state court orders, and any order issued by this Court regarding Plaintiff's claims would directly interfere with the operation of these state court orders.").[3] The Third Circuit agreed, ruling on appeal that the relief requested by Plaintiff invoked "exactly the type of determination that the *Rooker-Feldman* doctrine prohibits." *Van Tassel*, 390 Fed. Appx. at 203.

Plaintiff's subsequent federal declaratory judgment action suffered the same fate. In that action, Plaintiff challenged the precise same state court orders at issue in the instant case, to wit: Judge Piccione's determination that she be held in civil contempt for failing to satisfy the judgments entered against her in the prior proceedings, and Judge Piccione's orders transferring her from prison to house arrest and expunging the miscellaneous criminal charge from her record. *Van Tassel II*, 2013 WL 3169005 at *3. On appeal, the Third Circuit characterized Plaintiff's claims as "essentially appeals from state-court judgments" and affirmed their dismissal on the basis of the *Rooker-Feldman* doctrine. *Van Tassel*, 2014 WL 1758894 at *3.

Plaintiff's current lawsuit is, in large measure, cut from the same cloth. In Count I of her complaint, Plaintiff contends that the Defendants violated her Fourteenth Amendment due process rights by "faking and forging charges" against her and confining her to house arrest as the result of those "false" charges. Count II alleges that Plaintiff was subjected to malicious

---

[3] Plaintiff's claim of retaliatory prosecution in *Van Tassel I* survived the defendants' *Rooker-Feldman* challenge but was dismissed on alternate grounds.

prosecution in violation of the Fourth Amendment because the state court entered a false criminal charge into its docketing system. Count III alleges that the Defendants infringed upon Plaintiff's First Amendment right of access to the courts by bringing (and later expunging) criminal charges against her without a hearing. By way of relief, Plaintiff requests a declaration that the state court judgments were unconstitutional and monetary relief.

As this Court has previously noted, the *Rooker-Feldman* doctrine has both procedural and substantive requirements. *Van Tassel I*, 659 F.Supp.2d at 689. With respect to the procedural elements, *Rooker-Feldman* can only be invoked where "a federal-court action has been commenced after the rendering of a judgment by a state court." *Id*. In the instant case, the orders issued by Judge Piccione holding Plaintiff in civil contempt, placing her on house arrest, releasing her on bail, and expunging her criminal record each clearly predate the instant action. Consequently, the procedural elements of *Rooker-Feldman* are satisfied.

Turning to the substantive requirements, it is axiomatic that the *Rooker-Feldman* doctrine only operates as a jurisdictional bar if the injuries alleged by Plaintiff "were caused by a state court judgment or ruling which was entered against her." *Id*. at 690 (citing *Exxon Mobil*, 544 U.S. at 284). The critical task is to "identify those federal suits that . . . actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great W. Mining*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2nd Cir. 2005)). As an illustration, the Second Circuit Court of Appeals has provided the following example (in a passage cited with approval in *Great Western Mining*):

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a

> parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Hoblock,* 422 F.3d at 87; *see also Van Tassel I,* 659 F.Supp. 2d at 691 (concluding that plaintiff's due process and denial of access to the courts claims were barred by *Rooker Feldman* because they alleged harm directly caused by a state court order and sought reversal of that decision).

On the other hand, the Third Circuit has cautioned that "a federal plaintiff who was injured by a state-court judgment is not invariably seeking review and rejection of that judgment." *Great W. Mining*, 615 F.3d at 167. The facts of *Great Western Mining* are particularly instructive in this regard. The plaintiff, after finding itself on the losing end of arbitration proceedings, filed a state court action alleging that the arbitration award suffered from numerous defects and improprieties. When the state court affirmed the award, the plaintiff filed a federal action contending that the state court proceedings had been a sham because "the defendants conspired with the courts to ensure the outcome" of the proceeding. *Id*. at 162. On appeal, the Third Circuit distinguished between actions "claiming that the decision of the state court was incorrect or that the decision itself violated [a plaintiff's] constitutional rights" and those "alleging that the people involved in the [adverse] decision . . . violated [the plaintiff's] constitutional rights, independently of the state court decision." *Id*. at 172 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 662 (7th Cir. 2002)). The Court ultimately concluded that plaintiff's allegation that the state court outcome had been predetermined as the result of a conspiracy was an attack on the defendants' independent actions, rather than an attack on the judgment itself. *Id*. at 172-73 ("The alleged agreement to reach a predetermined outcome in a case would itself violate Great Western's constitutional rights, independently of the subsequent state-court

9

decisions."). Consequently, the Court concluded that the *Rooker-Feldman* doctrine was not applicable. *Id*.

Applying these principles to the instant case, it is clear that all of the harm alleged by Plaintiff – her financial losses, her incarceration, her house arrest, and the institution and expungement of a criminal charge against her – flowed directly from the various orders issued by Judge Piccione. Moreover, her allegations that Judge Piccione violated her constitutional rights in the course of holding her in contempt, releasing her on bail, confining her to house arrest, and refusing to allow her a hearing represent a clear and explicit invitation for this Court to "review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166. This we cannot do. *See, e.g., Middlebrook at Monmouth v. Liban,* 419 Fed. Appx. 284, 285-86 (3rd Cir. 2011) (observing that federal courts "cannot review proceedings conducted by a state tribunal to determine whether it reached its result in accordance with law"); *Van Tassel*, 2014 WL 1758894 at * 3 (holding that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments").

The Court reaches a different conclusion, however, with respect to Plaintiff's allegation that Judge Piccione conspired with various other individuals to bring "false" and "forged" criminal charges against her. This claim is not entirely barred by the *Rooker-Feldman* doctrine because, as in *Great Western Mining*, Plaintiff is alleging that the individuals involved in the decision to institute the criminal charge against her "violated [her] constitutional rights, independently of the state court decision." *Id*. at 172-73; *see also Van Tassel I*, 659 F.Supp.2d at 692 (holding that "Plaintiff's claim of retaliatory prosecution . . . is not entirely barred by the *Rooker-Feldman* doctrine [because] some of her alleged injuries" were caused by the individuals who conspired to bring allegedly false criminal charges against her rather than "any orders of the

state court"); *Mikhail v. Kahn*, 2014 WL 114340 at *11 (E.D. Pa. Jan 13, 2014) (noting that conspiracy and malicious prosecution claims are not typically barred by *Rooker-Feldman* because they are caused by individual actors rather than any particular state court judgment). Nonetheless, as discussed below, this claim is subject to dismissal on other grounds.

### B. Immunity

In addition to their jurisdictional challenge, several Defendants have raised immunity defenses that provide an independent basis for dismissal of Plaintiff's malicious prosecution charge. Each will be discussed in turn.

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another States, or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend. XI. This language "renders unconsenting States immune from suits brought in federal courts by private parties." *Haybarger v. Lawrence County Adult Prob. and Parole*, 551 F.3d 193, 197-98 (3rd Cir. 2008). Moreover, the immunity afforded by the Eleventh Amendment extends to "Pennsylvania's judicial districts, including their probation and parole departments" because those entities "are part of the Commonwealth government rather than local entities." *Id*. at 198. Finally, it is axiomatic that "a suit against a State official in his or her official capacity is, in all respects other than name, a suit against the State." *Van Tassel I*, 659 F.Supp.2d at 695 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

As noted in the complaint, Judge Piccione is a Pennsylvania court of common pleas judge and Jendrysik is the Chief Probation Officer of the Lawrence County Adult Probation and Parole Department. (Docket No. 1 at ¶¶ 3-4). As such, each is considered to be an arm of the State of

Pennsylvania and is entitled to Eleventh Amendment immunity with respect to claims against them in their official capacities. *See, e.g., Van Tassel I*, 659 F.Supp.2d at 695 (recognizing that a Pennsylvania court of common pleas judge is entitled to Eleventh Amendment immunity with respect to official capacity claims); *Haybarger*, 551 F.3d at 198 ("As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity.").

### 2. Judicial Immunity

"It is a well-settled principle of law that judges are generally immune from a suit for money damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3rd Cir. 2000) (internal quotations omitted). This is true "even if his [or her] exercise of authority is flawed by the commission of grave procedural errors" or "allegations of bad faith or malice." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 703 (W.D. Pa. 2007). Such immunity can only be overcome where a judge's actions are "nonjudicial in nature, or where such actions, while judicial in nature, are 'taken in the complete absence of all jurisdiction.'" *Van Tassel I*, 659 F.Supp.2d at 695 (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991)) (per curiam).

All of Plaintiff's claims against Judge Piccione involve actions undertaken while he was presiding over Plaintiff's contempt proceedings in the Lawrence County Court of Common Pleas. Moreover, each of the actions taken by Judge Piccione – issuing orders, setting bail, conducting hearings, and expunging criminal records – are fundamental judicial acts that fall within the jurisdiction of a Pennsylvania common pleas judge. *See, e.g.*, 42 Pa.C.S.A. § 931(a) ("the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the

courts of common pleas"); *Garr v. Peters*, 773 A.2d 183, 189-90 (Pa. Super. 2001) (noting that contempt power is essential to a court's authority); *Commonwealth v. V.G.*, 9 A.3d 222, 223-24 (Pa. Super. 2010) (recognizing the trial court's authority to expunge records); Pa. R. Crim. P. 520 (acknowledging that a common pleas judge has the authority to set bail). Accordingly, Judge Piccione is entitled to absolute immunity.

### 3. Prosecutorial Immunity

To the extent that Plaintiff alleges that District Attorney Lamancusa had a role in the decision to temporarily place the indirect criminal charge against Plaintiff on a miscellaneous docket, Lamancusa is protected by absolute immunity. It is well-established that a prosecutor is entitled to absolute immunity for prosecutorial duties that are "intimately associated with the judicial process," such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This is true even where the prosecutor acts maliciously or with complete indifference to the constitutional rights of the person charged. *See, e.g., Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3rd Cir. 1992) (granting absolute immunity to a prosecutor who brought false charges against a political rival); *Imbler*, 424 U.S. at 427-28 (noting that even groundless charges by a prosecutor are entitled to immunity in the interests of maintaining vigorous prosecution of crime).

### C. Failure to State a Claim

Finally, each of the Defendants, aside from Judge Piccione, has moved to dismiss on the basis that Plaintiff has failed to allege any conduct attributable to any of them in her complaint. A thorough review of the complaint reveals that Defendants Lamancusa, Covert, Jones, and Noonan are not mentioned anywhere outside of the general recitation of parties at the beginning of the document. No conduct is attributed to them, aside from generalized allegations that the

"Defendants" collectively violated Plaintiff's constitutional rights (typically in connection with an order issued by Judge Piccione). Similarly, the only reference to Jendrysik is a single sentence indicating that Judge Piccione directed him to set up electronic monitoring for Plaintiff. (Docket No. 1 at ¶ 9).

It is well-settled that "a defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3rd Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3rd Cir. 1988)). Rather, personal involvement must be pleaded "through allegations of personal direction or of actual knowledge and acquiescence." *Id*. Here, Plaintiff has completely failed to allege any facts demonstrating that Defendants Lamancusa, Covert, Jendrysik, Jones and Noonan had any involvement in the entry of the miscellaneous criminal charge against Plaintiff on the court's docket (or, for that matter, with respect to any other order issued by Judge Piccione). As such, Plaintiff cannot state a claim against any of those parties.

### D. Supplemental Jurisdiction over State Law Claims

In addition to her federal claims, Plaintiff has pleaded state law claims for intentional infliction of emotional distress (Count IV), damage to her reputation (Count V), false arrest (Count VI), and false imprisonment (Count VII). However, because the Court has dismissed all of Plaintiff's federal claims, the Court has discretion to decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); *see also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state

claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). In the interests of judicial economy, the Court hereby declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Those claims will be dismissed without prejudice.

### E. Leave to Amend

The Third Circuit has consistently held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3rd Cir. 2008). In this instance, Plaintiff will not be granted leave to amend her complaint. As previously discussed, the federal claims set forth in Counts I and III of Plaintiff's complaint are barred by the *Rooker-Feldman* doctrine and must be dismissed for lack of subject matter jurisdiction. With respect to the remaining claim for malicious prosecution, each of the Defendants are either entitled to absolute immunity, protected by Eleventh Amendment immunity, or had no personal involvement in the conduct underlying that claim. Under this set of circumstances, amendment would be clearly futile. *See Van Tassel I*, 659 F.2d at 701 (noting the futility of amendment where the plaintiff's federal claims are barred by *Rooker-Feldman* and where the defendants are largely entitled to immunity).

### V. CONCLUSION

For all of the foregoing reasons, the motions to dismiss filed by Defendants Piccione (Docket No. 11), Covert, Jendrysik and Lamancusa (Docket No. 13), Noonan (Docket No. 16), and Jones (Docket No. 28) are each GRANTED. The federal claims set forth in Counts I-III of Plaintiff's complaint are each dismissed, with prejudice. The state law claims set forth in Counts

IV-VII of Plaintiff's complaint are dismissed, without prejudice.  As each of Plaintiff's claims has been dismissed, the Clerk of Court is directed to mark this case CLOSED.


*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


CC/ECF: All parties of record.
Date: May 12, 2014